MERRITT, Circuit Judge,
dissenting.
I disagree with the opinion of my colleague, Judge Rogers, that the writ should issue setting aside the State’s judgment in the case. My reasons are as follows:
First, the number of available black jurors in Kent County, Michigan, remains much below ten percent — in line with the case from Kent County recently decided by the United States Supreme Court in 2010, Berghuis v. Smith, 559 U.S. 314, 130 S.Ct. 1382, 176 L.Ed.2d 249, in which the Court held that the trial by an all-white *605 jury in a similar situation did not violate the Sixth Amendment. It reversed this Court in that case, reported at 543 F.3d 326 (2010). The Supreme Court observed that the number of non-white jurors seemed to be further substantially reduced because of social and economic factors leading potential black jurors at times to avoid serving by not responding to mail notice to appear. The Supreme Court noted that in such situations where “members of the distinctive group” are a “small percentage of those eligible for jhry service” we should be hesitant to find that the state engaged in “systematic exclusion” when the jury turns out to be all-white. Id. at 329-30. Based on the law of averages, along with the random nature of selecting the persons to be called for jury duty, there are likely to be many all-white juries in Kent County. The Court found that in such situations “absolute disparity and comparative disparity ... can be misleading,” and rejected Sixth Amendment arguments, like those in the instant case, based on such abstract statistical measures.
My colleagues cite for authority and follow this Court’s reasoning in Berghuis v. Smith, supra, the Kent County case the Supreme Court reversed. So far as I can follow the statistical tests explained in Judge Rogers’s opinion in this case, the reasoning is based on the “absolute” and “comparative” statistical tests that the Supreme Court rejected as “misleading” when the percentage of blacks and Hispanics is as low as it remains in Kent County. I read the Supreme Court opinion as rejecting the use of these statistical tests in our earlier Berghuis opinion. The statistical analysis remains the same in the instant case as in our earlier opinion that the Supreme Court reversed.
Second, in the case before us, the number of available black jurors in Kent County, Michigan, is well below 10% so that by the law of averages many juries would be all white. Yet in this case, we do not even know that there were no blacks on the jury because apparently no record was kept, and no record is available, about who was on the jury. We do not know how many men or women, or how many blacks or Hispanies, were on the jury. There may well have been one or more black members on the jury in this case. We simply do not know the facts on this question. If we do not know the facts on this question, we cannot logically' or accurately say that in reality there was “systematic exclusion” in this case, except in the most abstract, generalized statistical sense.
Third, even if we assume the under representation of black jurors based on the “computer glitch” and the various statistical tests courts have used to measure the representation of distinctive groups in jury pools, the assumption may very well be wrong because one or more of the clerks in the Kent County Circuit Court Clerk’s office, on their own initiative, apparently added black members to some of the veni-res in order to overcome what they perceived to be juries that were too white. Based on the findings of Michigan courts, we may take judicial notice of the work of the clerks of court to try to make up for the shortfall of black jurors:
Moreover, there was evidence that the error began in April 2001 and persisted over a period of 16 months. Terry Hol-trop, the ease-management manager for the Kent Circuit Court, testified that he became aware in April 2001 that there was a problem of undérrepresentation of minorities on Kent County juries. Gail VanTimmeren, the jury clerk for the Kent Circuit Court, testified that it was “visually evident” that there were not enough minorities coming in for jury duty and that she had spoken to the administrator “over and over again” *606 about this. VanTimmeren asserted that on a number of occasions, she handpicked individuals who appeared to be African-American to be placed on a panel from which a jury would be selected. She asserted that “we significantly, in every single week, were not getting minorities in, and something was wrong.”
People v. Bryant, 289 Mich.App. 260, 796 N.W.2d 135, 143-44 (2010). Thus, we do not know whether any particular jury was unrepresentative of the community.
Fourth, when the jury decides a highly contested case based on the instincts, credibility determinations and inferences of twelve jurors after extensive discussions in the jury room, how can we judge the effect of the failure to have seated, or called for jury duty, a juror from a particular distinctive group? So long as the evidence supports the verdict and so long as the selection process does not purposely discriminate against members of the group, I am unable to find prejudice or a reasonable basis for setting aside a jury verdict in cases like this one.
A central purpose of the modern trial by jury is to protect the citizen from prosecu-torial overreach by democratizing the judicial process through a representative group of citizens who apply the often-complicated rules of the criminal law and debate among themselves what justice requires in the case. It is a great “bulwark” of liberty developed over ten centuries of Anglo-American law. See Plucknett, “A Concise History of the Common Law” 136-38 (1956). Taking into account all of the factors in this case' — e.g., the attitude of the Supreme Court about the lack of persuasiveness of abstract statistical arguments in this situation, our lack of precise knowledge of what jurors were in fact impaneled, and the facts of the case and the jury verdict — I cannot say that the jury in this case was not representative of the people of Kent County, and I am,not inclined to set aside the verdict and start all over again.